FILED
CLERK, U.S. DISTRICT COURT
7/21/2025
CENTRAL DISTRICT OF CALIFORNIA
BY: ___asi___ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 2:25-cr-00609-DSF |
|---|---|
| Plaintiff, | I N F O R M A T I O N |
| v. | [18 U.S.C. § 1347: Health Care Fraud; 18 U.S.C. § 982: Criminal Forfeiture] |
| JAY KYUN IM, | |
| Defendant. | |

The United States Attorney charges:

[18 U.S.C. §§ 1347, 2]

A.   INTRODUCTORY ALLEGATIONS

At times relevant to this Information:

1.   L.A. Pharmaceuticals, Inc., d/b/a LA Drugs ("LA Drugs"), was a pharmacy located at 3030 West Olympic Blvd., Unit 118, Los Angeles, California 90006, within the Central District of California.

2.   Defendant JAY KYUN IM was a resident of Los Angeles. Beginning in or around 1995, defendant IM was the purported owner of LA Drugs. Beginning in or around 2009, defendant IM began working at LA Drugs as a licensed pharmacy technician, while remaining the purported owner.

3. Co-Schemer 1 was a licensed pharmacist who controlled, and was the beneficial owner of, LA Drugs and was the eldest brother of defendant IM.

The Medicare Program

4. Medicare was a federal health care benefit program, affecting commerce, that provided benefits to individuals who were 65 years and older or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services.

5. Individuals who qualified for Medicare benefits were referred to as Medicare "beneficiaries." Each beneficiary was given a unique health insurance claim number.

6. Medicare programs covering different types of benefits were separated into different program "parts." Part D of Medicare (the "Medicare Part D Program") subsidized the costs of prescription drugs for Medicare beneficiaries in the United States.

7. To receive Medicare Part D Program benefits, a beneficiary had to enroll in a Medicare drug plan. Medicare drug plans were operated by private companies approved by Medicare. Those companies were often referred to as drug plan "sponsors." A beneficiary in a Medicare drug plan could fill a prescription at a pharmacy and use his or her plan to pay for some or all of the prescription.

8. A pharmacy could participate in the Medicare Part D Program by entering into retail network agreements directly with one or more drug plan sponsors, Pharmacy Benefit Managers

("PBMs"), or Pharmacy Services Administrative Organizations ("PSAOs"), which would, in turn, contract with PBMs on behalf of the pharmacy. A PBM acted on behalf of one or more drug plans. Through a drug plan's PBM, a pharmacy could join the drug plan's network. When a Medicare Part D Program beneficiary presented a prescription to a pharmacy, the pharmacy submitted a claim either directly to the drug plan sponsor or to a PBM that represented the beneficiary's Medicare drug plan. The drug plan sponsor or PBM determined whether the pharmacy was entitled to payment for each claim and periodically paid the pharmacy for outstanding claims. When a PBM paid the pharmacy, the drug plan's sponsor reimbursed the PBM for its payments to the pharmacy.

9. Medicare and Medicare drug plans (collectively, "Medicare") were each a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), and a "Federal health care program," as defined by Title 42, United States Code, Section 1320a-7b(f).

10. CMS required all Medicare Part D drug plan sponsors or their delegates to obtain a formal attestation from all "downstream entities" to demonstrate compliance with, among other things, all applicable Federal and state laws. Therefore, PBMs required contracted pharmacies to attest to the pharmacy's compliance with all state and federal fraud, waste, and abuse requirements and laws, and to the accuracy, completeness, and truthfulness of the submitted claims. PBMs also required contracted pharmacies to collect copayments from beneficiaries and to seek reimbursement from PBMs only if the beneficiary

1 received the prescription, and at times to credit back to PBMs
2 any portion of the drugs returned back to the pharmacy and
3 reintroduced into the pharmacy's inventory.
4        11.  Medicare paid for claims only if the items or services
5 billed were medically necessary for the treatment or diagnosis
6 of the beneficiary's illness or injury, documented, and actually
7 provided as represented.  Medicare would not pay for items or
8 services that were procured through kickbacks and bribes.
9 B.   THE SCHEME TO DEFRAUD
10       12.  Beginning no later than in or around December 2014,
11 and continuing through in or around May 2022, in Los Angeles
12 County, within the Central District of California, and
13 elsewhere, defendant IM, together with Co-Schemer 1 and others
14 known and unknown to the United States Attorney, each aiding and
15 abetting one another, knowingly, willfully, and with the intent
16 to defraud executed and willfully caused to be executed a scheme
17 and artifice: (a) to defraud a health care benefit program,
18 namely, Medicare, as to material matters in connection with the
19 delivery of and payment for health care benefits, items, and
20 services; and (b) to obtain money from a health care benefit
21 program, namely, Medicare, by means of materially false and
22 fraudulent pretenses, representations, and promises, and the
23 concealment of material facts, in connection with the delivery
24 of and payment for health care benefits, items, and services.
25 C.   MEANS TO ACCOMPLISH THE SCHEME TO DEFRAUD
26       13.  The fraudulent scheme operated, in substance, as
27 follows:
28

1          a.   Defendant IM served as the nominee owner of LA Drugs to conceal Co-Schemer 1's beneficial ownership and control of LA Drugs from Medicare and the Internal Revenue Service.

           b.   LA Drugs contracted through PBMs and PSAOs to bill Medicare for dispensing prescription drugs.

           c.   After filling a beneficiary's prescription and billing Medicare for purportedly dispensing prescribed drugs, defendant IM, Co-Schemer 1, and others illegally enticed customers to either return the prescription drugs to the pharmacy or not take possession of the prescription drugs by providing, and causing to be provided, illegal bribes and kickbacks, including in the form of free, in-kind over-the-counter drugs and/or cosmetic products, and not charging co-pays.

           d.   A cashier or other employee of LA Drugs retrieved the uncollected or returned drugs and provided them to other individuals at LA Drugs, including defendant IM.

           e.   Defendant IM, Co-Schemer 1, and others at LA Drugs did not reverse or credit (or cause to be reversed or credited) the claims previously submitted to Medicare for the uncollected and returned drugs.  Instead, the drugs were either restocked or when another prescription for the same drug came in, defendant IM, Co-Schemer 1, and others simply replaced the prescription label on the uncollected and returned drugs with another label for a new patient and billed Medicare again for the same drugs, allowing defendant IM, Co-Schemer 1, and others to bill Medicare multiple times for dispensing the same drug.

   f. Pursuant to and throughout the course of the scheme, defendant IM, Co-Schemer 1, and others caused proceeds of the scheme to be sent to companies controlled by, and for the benefit of, Co-Schemer 1.

   g. Pursuant to and throughout the course of the scheme, defendant IM, Co-Schemer 1, and others caused documents to be signed and certified that falsely portrayed defendant IM as the beneficial owner of LA Drugs.

 14. Pursuant to the scheme, between in or around December 2014 and in or around May 2022, defendant IM, Co-Schemer 1 and others known and unknown to the United States Attorney caused Medicare to pay LA Drugs approximately $5,904,964 in false and fraudulent claims for prescription drugs that were not medically necessary and not dispensed, and where the beneficiaries were induced to submit the prescriptions by the payment of illegal kickbacks and bribes.

D. <u>EXECUTION OF THE SCHEME TO DEFRAUD</u>

 15. On or about August 12, 2020, in Los Angeles County, within the Central District of California, and elsewhere, defendant IM, together with Co-Schemer 1 and others known and unknown to the United States Attorney, each aiding and abetting one another, knowingly and willfully executed and willfully caused to be executed the fraudulent scheme described above by submitting and causing to be submitted to Medicare a false and fraudulent claim (number 202255610641090999) through LA Drugs for approximately $221.21 for purportedly dispensing to beneficiary P.H. the prescription drug Creon, 36,000 unit oral capsule, which was, in fact, not dispensed to beneficiary P.H.

FORFEITURE ALLEGATION

[18 U.S.C. § 982]

1.  Pursuant to Rule 32.2(a), Fed. R. Crim. P., notice is hereby given that the United States will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(7), in the event of the defendant's conviction of the offense set forth in this Information.

2.  The defendant, if so convicted, shall forfeit to the United States of America the following:

   (a)  All right, title, and interest in any and all property, real or personal, that constitutes or is derived, directly or indirectly, from the gross proceeds traceable to the commission of any offense of conviction; and

   (b)  To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3.  Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), the defendant, if so convicted, shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as a result of any act or omission of the defendant, the property described in the preceding paragraph, or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the

//

//

jurisdiction of the Court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

BILAL A. ESSAYLI
United States Attorney,

*/s/ Christina Shay*

CHRISTINA T. SHAY
Assistant United States Attorney
Chief, Criminal Division

KRISTEN A. WILLIAMS
Assistant United States Attorney
Chief, Major Frauds Section

ROGER A. HSIEH
Assistant United States Attorney
Deputy Chief, Major Frauds Section

LORINDA LARYEA
Acting Chief, Fraud Section
U.S. Department of Justice

ERIKA V. SUHR
Trial Attorney, Fraud Section
U.S. Department of Justice